UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

DAVID STREETY,

    Plaintiff,

                 Case No. 2:20-cv-92

v.

                 Honorable Janet T. Neff

DANIEL C. GRAND et al.,

    Defendants.

_____/

**OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.  Factual allegations**

    Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Alger Correctional Facility (LMF)

in Munising, Alger County, Michigan; the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County; and the Chippewa Correctional Facility (URF), also in Kincheloe.

Plaintiff sues Michigan Assistant Attorney General Daniel C. Grand and MDOC Director Heidi Washington. Plaintiff also sues the following LMF employees: Warden Catherine Bauman; Security Classification Committee member G. Schram; Assistant Sergeant Unknown Perry; PCs E. Hoover and R. Masters; Assistant Resident Unit Manager T. Salo; Corrections Officer D. Robinson; Health Care staff member Freddy Moores; and Jeff Contraras. Plaintiff further sues KCF Sergeant Moran. Plaintiff also sues URF Warden Connie Horton and MDOC Hearing Officer Unknown O'Brien.

Plaintiff appears to have legitimately feared for his safety when MDOC returned him to KCF where he had previously helped prosecutors investigate and ultimately prosecute at least one employee. Plaintiff alleges that on May 24, 2018, MDOC transferred him to KCF. Plaintiff asserts that when he was previously incarcerated at KCF, he wore a wire and aided the State's prosecution of KCF personnel. Plaintiff has attached documents to the complaint from the Michigan Department of the Attorney General and other sources, which appear to support these assertions. Plaintiff has further attached documents alleging that his contributions to the State's investigation and prosecution may have also affected other prisoners who were incarcerated at KCF at the time. Plaintiff contends, therefore, that his transfer to KCF threatened his safety.

Upon arrival at KCF, prison staff asked for Plaintiff's name to confirm his identify, but Plaintiff refused. Plaintiff informed KCF staff that he was afraid for his safety at that facility and that MDOC allegedly should not have transferred him to KCF. Because Plaintiff refused to comply with the instructions, Defendant Moran reported Plaintiff for misconduct. Before Plaintiff was reviewed for the misconduct a week later, MDOC apparently transferred him to nearby URF.

Defendant O'Brien found Plaintiff guilty of the Class I misconduct, determining that Plaintiff intentionally refused to comply with Moran's order and that complying with the order would not have caused Plaintiff physical harm. O'Brien imposed a sanction of 10 days in punitive segregation.

Soon thereafter, while Plaintiff was still assigned to punitive segregation, MDOC transferred him to LMF. Plaintiff alleges that, although LMF is not adjacent to either KCF or URF, the geographical proximity to KCF continued to give him anxiety. He alleges that he feared for his safety while at LMF.

Less than two months after his arrival at LMF, Plaintiff alleges that on July 12, 2018, two other inmates followed him to his cell and attacked him. A verbal altercation between Plaintiff and another prisoner began in the unit's dayroom, and Plaintiff alleges that he attempted to remove himself from the threat. He left the dayroom with at least one other inmate in pursuit. Plaintiff asserts that he believed he would find safety in his cell because the officer station allegedly should not have permitted the other inmate into that side of the unit. However, Plaintiff's pursuer gained access, followed Plaintiff into his cell, and attacked him. Plaintiff alleges that he partially lost consciousness during the attack. When he regained consciousness, a second attacker had joined. At least one of Plaintiff's attackers allegedly referenced activity at KCF, but Plaintiff fails to specify what activity his assailant referenced or whether the activity related to the investigation involving Plaintiff.

Plaintiff did not report the attack but instead requested medical care for his injuries at the officer station. When Plaintiff arrived at the medical unit, Defendant Moore examined Plaintiff's injuries. Plaintiff alleges that Moore then left him, spoke with a corrections officer, returned, and then instructed Plaintiff to go lock down.

3

Later that evening, Defendant Robinson reported Plaintiff for fighting, a Class I misconduct. Defendant Perry reviewed the misconduct charge shortly thereafter and confined Plaintiff to segregation pending further review. Although the body of the amended complaint fails to provide further details, documents attached to the original complaint indicate that Plaintiff apparently received a hearing and was reclassified to administrative segregation by Defendants Salo and Schram. Plaintiff alleges that Salo and Schram, in addition to Defendants Bauman and Masters, were responsible for him remaining in administrative segregation for 90 days.

For relief, Plaintiff seeks compensatory and punitive damages.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

4

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Defendant O'Brien

Plaintiff's only allegations referring to Defendant O'Brien involve O'Brien's conduct as an MDOC hearing officer who found Plaintiff guilty of misconduct. The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity from damages in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); Mich. Comp. Laws §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). Thus, Plaintiff's claim fails against Defendant O'Brien because O'Brien is absolutely immune from suit for damages under the circumstances of this case. Accordingly, Plaintiff fails to state a claim against Defendant O'Brien.

## IV.     Defendants Hoover and Contraras

Plaintiff identifies Defendants Hoover and Contraras as defendants to the action, but Plaintiff has not alleged any conduct involving either Hoover or Contraras.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint against that defendant is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

Because Plaintiff fails to even mention Defendants Hoover or Contraras in the body of the complaint, his claims against them fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, the complaint against Defendants Hoover and Contraras must be dismissed.

## V. Defendants Moran and Robinson

Plaintiff's complaint fares no better against Defendants Moran and Robinson. Plaintiff asserts that Moran and Robinson issued him misconduct reports. Plaintiff does not dispute the allegations in those misconduct reports. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Plaintiff has not alleged any unconstitutional conduct by Moran or Robinson. Accordingly, the Court concludes that Plaintiff's allegations fail to sufficiently state a claim against them.

## VI. Defendants Washington, Horton, Bauman, Masters, and Perry

Plaintiff fails to make specific factual allegations against Defendants Washington, Horton, Bauman, Masters, and Perry, other than his claims that they, as wardens and other senior prison officials, failed to conduct adequate investigations in response to his grievances or that they upheld misconduct charges filed against Plaintiff by subordinates. He also arguably suggests that they failed to supervise their subordinates.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575-76; *Greene*, 310 F.3d at 899. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead

7

that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Washington, Horton, Bauman, Masters, and Perry engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## VII. Defendant Grand

Plaintiff presumably intends to allege an Eighth Amendment claim that Defendant Grand, an assistant attorney general in the criminal division, failed to protect Plaintiff from harm at URF, KCF, and LMF.

As an initial matter, the Court concludes that Defendant Grand is not absolutely immune from suit for the conduct Plaintiff alleges. The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010); *Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Lomaz*, 151 F.3d at 497. Acts which occur in the course of the prosecutor's role as advocate are entitled to protection of absolute immunity, in contrast to investigatory or administrative functions that are normally performed by a detective or police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276-78 (1993); *Grant*, 870 F.2d at 1137. In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role as an advocate intimately associated with the judicial phase of the criminal process. *Spurlock*, 330 F.3d at 797; *Ireland v. Tunis*, 113

8

F.3d 1435, 1443 (6th Cir. 1997). Obviously, Grand's alleged conduct was not intimately associated with the judicial phase of the criminal process. Grand's efforts to investigate and respond to Plaintiff's requests for transfer were investigatory or administrative in nature rather than part of Grand's role as an advocate. Thus, Defendant Grand is not entitled to immunity, and the Court must determine whether Plaintiff has sufficiently alleged an Eighth Amendment claim against him.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993)

9

(applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Even if the Court were to presume, without deciding, that Plaintiff's allegations satisfy the objective prong, his allegations clearly fail to satisfy the subjective prong. Defendant Grand responded reasonably to the risk Plaintiff brought to his attention. In a letter from Grand to Plaintiff that is attached to the original complaint, Grand indicated that he directed the supervising agent in-charge to contact the MDOC on Plaintiff's behalf. Grand found that MDOC was aware of Plaintiff's security needs. Grand further investigated and determined that Plaintiff did not face a heightened risk at his facility because the target of the prosecution had been released from MDOC's custody. Moreover, within days of Plaintiff's arrival at KCF, he was moved to URF, and then shortly thereafter to LMF. Plaintiff does not dispute Grands' statements. Therefore, Plaintiff simply cannot demonstrate that Grand disregarded an excessive risk to Plaintiff's safety. Accordingly, the Court concludes that Plaintiff fails to sufficiently allege an Eighth Amendment claim against Defendant Grand.

**VIII. Defendant Moores**

Plaintiff further claims that Defendant Moores disclosed his personal information in violation of his right to privacy under the Fourteenth Amendment.

> Two types of interests have been identified by the Supreme Court as protected by the right to privacy that is rooted in the substantive due process protections of the Fourteenth Amendment. One is the interest in "independence in making certain kinds of important decisions," *Whalen v. Roe*, 429 U.S. 589, 599-600 & n.26 (1977) (noting that these decisions have been characterized as dealing with "matters relating to procreation, marriage, contraception, family relationships, and child rearing and education." (quoting *Paul v. Davis*, 424 U.S. 693, 713 (1976)). The other type of privacy interest applicable to individuals is the "interest in avoiding disclosure of personal matters." *Id*. at 599, 603-04 (recognizing that a statute requiring that the state be provided with a copy of certain drug prescriptions implicated the individual's interest in nondisclosure, but upholding the law because the statute contained adequate security measures); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 465 (1977) (assuming that President Nixon had a legitimate expectation of privacy in his private communications, but upholding a federal law that provided for the review and classification of presidential materials by professional archivists).

*Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008). Plaintiff's claim implicates the second interest identified in *Whalen*, i.e. the "individual's right to control the nature and extent of information released about that individual," which "has been coined an informational right to privacy." *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998).

In *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981), the Sixth Circuit reviewed the Supreme Court's opinions regarding the right to privacy, including *Whalen*, *Nixon*, and *Paul*, and concluded that "the Constitution does not encompass a general right to nondisclosure of private information." *Id*. at 1087-90. The court declined to "recognize a general constitutional right to have disclosure of private information measured against the need for disclosure," reasoning that "[t]he Framers . . . cannot have intended that the federal courts become involved in an inquiry nearly as broad balancing almost every act of government . . . against its intrusion on a concept so vague, undefinable, and all-encompassing as individual privacy." *Id*. at 1089-90. Consequently,

11

the Sixth Circuit restricts the constitutional right to informational privacy to "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *Id*. at 1090 (citations omitted). "Only after a fundamental right is identified should the court proceed to the next step of the analysis – the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private." *Lambert*, 517 F.3d at 440.[2]

Applying these standards, the Sixth Circuit has repeatedly rejected claims asserting a constitutional right to nondisclosure of personal information. *See*, *e.g.*, *Lee v. City of Columbus*, 636 F.3d 245, 261 (6th Cir. 2011) (city's requirement that employees returning from sick leave disclose the nature of their illness to their immediate supervisors does not implicate a fundamental right); *Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 270-71 (6th Cir. 2010) (county's release of medical record of deputy county clerk to citizen pursuant to open records request did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Jenkins v. Rock Hill Local Sch. Dist*., 513 F.3d 580, 591 (6th Cir. 2008) (school's disclosure of information to Children Services not a violation of plaintiff's constitutional rights); *Barber v. Overton*, 496 F.3d 449, 455-57 (6th Cir. 2007) (release of guards' birth dates and social security numbers did not rise to constitutional level); *Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board was not a constitutional violation); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir.

---

[2] In contrast to the Sixth Circuit, other circuits hold that the disclosure of some kinds of personal information requires the court to balance the government's interests in disclosure against the individual's interest in avoiding disclosure. *See, e.g.*, *Barry v. New York*, 712 F.2d 1554, 1559 (2d Cir. 1983); *Fraternal Order of Police v. Philadelphia*, 812 F.2d 105, 110 (3d Cir. 1987); *Woodland v. Houston*, 940 F.2d 134, 138 (5th Cir. 1991) (per curiam); *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999). Although the Supreme Court recently contrasted the holding in *DeSanti* with the approach taken in the foregoing opinions, the Court declined to clarify the scope of a constitutional right to informational privacy. *See NASA v. Nelson*, 562 U.S. 134, 144-48 & n.9 (2011) (assuming, without deciding, that such a right existed in that case).

1995) (disclosure of rape victim's medical records to an inmate did not violate her constitutional privacy rights); *DeSanti*, 653 F.2d at 1091 (constitutional rights not violated by dissemination of juvenile delinquents' social histories to various state agencies). Indeed, the Sixth Circuit has recognized an "informational-privacy interest of constitutional dimension" in only two instances: (1) where the release of personal information could lead to bodily harm, as in *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998) (dissemination of undercover officers personnel file to members of violent street gang some of whom officers testified against at trial); and (2) where the information released was of a "sexual, personal, and humiliating nature," as in *Bloch*, 156 F.3d at 684 (nonconsensual disclosure at press conference of details of plaintiff's rape).

In *Lee*, plaintiff challenged a city's policy requiring its employees to disclose the nature of their illness to their immediate supervisors after taking sick leave. 636 F.3d at 261. The court noted that it had "not yet confronted circumstances involving the disclosure of medical records that, in [its] view, are tantamount to the breach of a 'fundamental liberty interest' under the Constitution." *Id*. The court upheld the policy, reasoning that it did not "implicate the preservation of life and personal security interests recognized in *Kallstrom*, or the interest in shielding sexuality and choices about sex, protected in *Bloch*." *Id*.

Plaintiff appears to allege only that Defendant Moores, a health care employee, informed other prison staff that Plaintiff had injuries suggesting that he had been in a physical altercation. Obviously, Plaintiff has no fundamental liberty interest protecting the information that he had injuries or that he had been in a fight with other prisoners. That information neither is likely to lead to further bodily harm nor is it sexual or humiliating in nature. Thus, no fundamental liberty interest is implicated.

Moreover, even if the information that Plaintiff was involved in a prison fight implicated a fundamental right, his claim would fail at the second step of the analysis: the balancing of interests. *See Lambert*, 517 F.3d at 440. The government's need to keep order and maintain discipline in the prison outweighs Plaintiff's privacy interest. *See Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) (concluding that prison administrators must "take all necessary steps to ensure the safety" of prison personnel and visitors, and that they must take "reasonable measures to guaranteee the safety of the inmates themselves"). At a minimum, Moores' decision to allegedly disclose Plaintiff's involvement in a fight deserves a measure of deference because discipline and institutional security were concerned. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Accordingly, the Court concludes that Plaintiff has not sufficiently alleged facts to state a claim against Defendant Moores.

## IX. Defendants Salo and Schram

Plaintiff's only allegations involving Defendants Salo and Schram assert that they kept him in administrative segregation for 90 days following the fighting misconduct.

As an initial matter, Plaintiff's misconduct charge does not itself raise a due process claim. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

14

in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Further, Plaintiff does not have a constitutional right to a particular security level or classification. The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id.*; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, Plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement).

Because Plaintiff cannot raise a due process claim related to the misconduct charge nor does he have a constitutional right to a particular security level or classification, he fails to state a claim against Defendants Salo and Schram.

## X.     Pending Motions

Plaintiff has further filed motions for appointment of counsel (ECF No. 6) and for discovery (ECF No. 7) that are currently pending before the Court.

### A.     Appointment of Counsel

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the

16

complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. Prior to reviewing the merits of Plaintiff's complaint, the Court carefully considered these factors and determined that the assistance of counsel was not necessary to the proper presentation of Plaintiff's position. Thus, the Court will deny Plaintiff's request for appointment of counsel.

    **B.**    **Discovery**

Further, in light of the Court's dismissal of the complaint on the merits, the Court will deny Plaintiff's motion for discovery as it is moot.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated: December 1, 2020   /s/ Janet T. Neff
　　　　　　　　　　　　　　　　Janet T. Neff
　　　　　　　　　　　　　　　　United States District Judge